UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE L. MEEHLEDER,

        Plaintiff,                              Civil Action No. 11-cv-12946

        v.                                    District Judge George Caram Steeh
                                                   Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [8, 12]**

Plaintiff Michelle Meehleder brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of Defendant Commissioner of Social Security granting Disability Insurance Benefits ("DIB") from September 1, 2004 through October 10, 2007, but denying benefits thereafter. Both parties filed summary judgment motions (Dkts. 8, 11), which are presently before this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (Dkt. 2).

**I. RECOMMENDATION**

For the reasons set forth below, this Court finds that the ALJ lacked substantial evidence for his finding of medical improvement as of October 10, 2007. Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be GRANTED, that Defendant's Motion for Summary Judgment be DENIED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be REMANDED with directions to the Commissioner to award Plaintiff disability income benefits continuing from October 10, 2007.

## II.  REPORT

### A.  Procedural History

On October 30, 2007, Plaintiff filed an application for DIB asserting that she became unable to work on September 1, 2004. (Tr. 98.)  The Commissioner initially denied Plaintiff's disability application on January 2, 2008.  (Tr. 53.)  Plaintiff then filed a request for a hearing, and on November 16, 2009, she appeared with her husband before Administrative Law Judge ("ALJ") Elliott Bunce, who considered the case *de novo*.  (*See* Tr. 24-50.)  In a February 25, 2010 decision, ALJ Bunce issued a partially favorable decision for Plaintiff.  (Tr. 6-18.)  ALJ Bunce found that Plaintiff was disabled for the period from September 1, 2004 through October 10, 2007 but not thereafter. (Tr. 15, 18.)  Plaintiff filed a Request for Review on April 15, 2010 disputing the ALJ's finding of medical improvement on October 10, 2007. (Tr. 5.)  The ALJ's decision became the final decision of the Commissioner on May 10, 2011 when the Appeals Council denied Plaintiff's request for review.  (Tr. 1.)  Plaintiff filed this appeal on July 7, 2011 (Dkt. 1.)

### B.  Background

Plaintiff worked primarily as a mortgage loan processor prior to her disability onset.  (Tr. 44.) At the time of the hearing, Plaintiff was 37 years old.  (*See* Tr. 31.)  Plaintiff holds an associates degree in accounting.  (Tr. 32.)

*1. The Hearing Before the ALJ*

*(a) Plaintiff's Testimony*

At the hearing before the ALJ, Plaintiff testified regarding the symptoms associated with her Postural Orthostatis Tachycardia Syndrom ("POTS").[1] (Tr. 32.) She testified that she gets lightheaded "every time [she] stand[s] up and walk[s] around." (Tr. 35.) Her other symptoms include nausea, increased heart rate, sweating, dizziness and migraines. (Tr. 35-36.) She takes Lorazepam to try to control her heartbeat. (Tr. 36.)

The last time she was hospitalized for POTS was in March of 2006. (Tr. 37.) The last medical record regarding her POTS is dated December of 2007. (Tr. 39.) Plaintiff admitted that her medical records are sporadic after December of 2007 because her husband lost his job, and she concomitantly lost her medical insurance. (Tr. 39-41.) She now only sees her family doctor – Dr. Charlie Schisler – once or twice a year for medication. (Tr. 34.) In contrast, at the onset of her POTS, she saw Dr. Schisler as much as twice a week. (*Id.*) She also saw her neurologist – Dr. Dardis – frequently, until "he told [her that there was] nothing really he could do for [her]." (*Id.*)

Plaintiff testified that despite her sporadic medical records of late, she continues to suffer from POTS. (Tr. 42.) She stated that, "[j]ust sitting here right now, I . . . I don't feel right. I feel like I'm going to throw up. My heart is racing. I can't – I have a hard time concentrating, [or]

---

[1] "POTS is one of a group of disorders that have orthostatic intolerance (OI) as their primary symptom. OI describes a condition in which an excessively reduced volume of blood returns to the heart after an individual stands up . . . . The primary symptom of OI is lightheadedness or fainting." (Dkt. 12, Def.'s Mot. Summ. J. at 2 n. 1.) In some cases, an individual can eventually improve and become functional. (*Id.*) In other cases, POTS is functionally "disabling." (Dkt. 13, Pl.'s Mot. Summ. J. at EDF Pg ID 798.)

3

reading anything." (Tr. 42.)

### *(b) Vocational Expert's Testimony*

Vocational expert ("VE") Judith Findora testified at Plaintiff's hearing simply to indicate that "the bulk of her work history was as a mortgage loan processor, which is exertionally sedentary and skilled." (Tr. 44.)

### *2. Medical Evidence*

Both Plaintiff and Defendant provide lengthy summaries of Plaintiff's medical evidence. However, they only dispute the ALJ's finding that Plaintiff was not disabled after October 10, 2007. (Dkt. 8, Pl.'s Mot. Summ. J.; Dkt. 12, Def.'s Mot. Summ. J.; Dkt. 13, Pl.'s Reply.) Therefore, only a brief summary is presented here.

Plaintiff suffered three third trimester miscarriages prior to September of 2004. (Tr. 182-219, 229.) After her third miscarriage, she began experiencing nausea, dizziness, chest pain, migraines and lightheadedness. (Tr. 229.) Thereafter ensued years of hospitalizations, mis-diagnoses, medical tests and medications. (Tr. 178-692.) Plaintiff saw a multitude of doctors including her family doctor, doctors at the University of Michigan, and, ultimately, doctors at the Mayo Clinic. (*Id*.) In March of 2006, the doctors at the Mayo Clinic finally diagnosed Plaintiff with POTS. (Tr. 471-75.)

After her diagnosis, Plaintiff did not return to her local neurologist – Dr. Gregory Dardas – until October 10, 2007. (Tr. 225-26, 678-79.) At that appointment Plaintiff reported that she had not suffered any actual syncopal episodes (fainting), but that she still experienced lightheadedness.[2]

---

[2] Notably, there are no records indicating that Plaintiff ever suffered a true syncopal episode from her POTS. (Tr. 178-692.) She always consistently complained about pre-syncopal symptoms – such as the lightheadedness and dizziness. (*Id*.)

4

(Tr. 678.) Dr. Dardas' notes from that appointment indicated that while there are no recommended treatments specifically for POTS, he would "try to implement what treatments are available here to give her some symptomatic relief from this difficult condition." (Tr. 537.)

Plaintiff returned to Dr. Dardas on December 5, 2007. Dr. Dardas noted that Plaintiff had been doing internet searches of various medications in an attempt to find treatment for her POTS. (Tr. 535.) He recommended trying Wellbutrin, and told her that he would see her every six months. (Tr. 536.) There is a large gap in the medical records between this appointment and May of 2008. (Tr. 178-692.) Moreover, the medical records from May of 2008 to January of 2010 are regarding routine medical care. (Tr. 615-91.)

**C. Framework for Disability Determinations**

Under the Social Security Act (the "Act") Disability Insurance Benefits is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

5

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

The Commissioner's implementing regulations also provide that medical improvement is to be determined though the application of an eight-step sequential analysis:

Step One: The ALJ must determine if the claimant is engaging in substantial gainful activity. If yes, continued benefits are denied without further analysis.

Step Two: The ALJ must determine whether the claimant has an impairment or combination of impairments, which meets or medically equals 20 C.F.R. Part 404, Subpart P, Appendix 1. If the yes, benefits continue without further analysis.

Step Three: The ALJ must determine whether medical improvement has occurred. Medical improvement is any decrease in the medical severity of the impairment(s) as established by improvement in symptoms, signs and/or laboratory findings. If medical improvement has occurred, the analysis proceeds to the fourth step. If not, the analysis proceeds to the fifth step.

Step Four: The ALJ must determine whether medical improvement is related to the ability to work. Medical improvement is related to the ability to work if it results in an increase in the claimant's capacity to perform basic work activities. If it does, the analysis proceeds to the sixth step.

> Step Five: The ALJ must determine if an exception to medical improvement applies. There are two groups of exceptions. If an exception from the first group applies (usually involving medical advances, vocational therapy, error in prior decision), the analysis proceeds to the sixth step. If an exception from the second group applies (usually involving fraud, lack of cooperation, inability to locate the claimant, failure to follow prescribed treatment), the analysis ends and the claimant is no longer disabled. If no exception applies, the analysis ends and the claimant's disability continues.
>
> Step Six: The ALJ must determine whether all the claimant's impairments in combination are severe. If they are not severe, the analysis ends and the claimant is no longer disabled. If they are severe, the analysis proceeds to step seven.
>
> Step Seven: The ALJ must assess the claimant's residual functional capacity and determine if he or she can perform his or her past relevant work. If the claimant is able to perform his or her past relevant work, continued benefits are denied without further analysis.
>
> Step Eight: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that claimant can perform, in view of his or her age, education, and work experience, continued benefits are denied.

20 C.F.R. § 404.1594 (d), (e), (f).

**D. The Administrative Law Judge's Findings**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2004 – Plaintiff's alleged onset date. (Tr. 12.) At step two, the ALJ found that Plaintiff had the following severe impairment: postural orthostatic tachycardia syndrome ("POTS"). (*Id.*) Next, the ALJ concluded that from September 1, 2004 through October 9, 2007 – the period of Plaintiff's disability – the impairment, alone or in combination, did not meet or medically equal a listed impairment. (Tr. 13.) Between steps three and four, the ALJ determined that Plaintiff lacked the residual functional capacity to sustain work *at any* exertional level from September 1, 2004 through October 9, 2007. (*Id.*) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Tr. 14.) At step five, the ALJ found that "there were no jobs that existed in significant numbers in the national economy that the claimant could have performed" from

7

September 1, 2004 through October 9, 2007. (Tr. 15.) Thus, Plaintiff "was under a disability, as defined by the Social Security Act, from September 1, 2004 through October 10, 2007." (*Id.*)

The ALJ then had to decide whether Plaintiff's disability continued to the hearing date. 42 U.S.C. § 423(f). Applying the eight step analysis outlined in 20 C.F.R. § 404.1594(b)(1), the ALJ determined that "medical improvement occurred as of October 10, 2007." (Tr.15-18.) The ALJ's step one and two analysis mirrored the step one and two findings discussed above. At step three, the ALJ found that medical improvement occurred as of October 10, 2007. (Tr. 15.) At step four, the ALJ found that Plaintiff's medical improvement was related to the ability to work. (Tr. 16.) At step six, the ALJ adopted his previous finding that Plaintiff's impairment was severe. (Tr. 12, 16.) At step seven, the ALJ found that Plaintiff had the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567, including her past relevant work as a mortgage-loan processor. (Tr. 16-18.) Therefore, the ALJ concluded that Plaintiff's disability ended on October 11, 2007. (Tr. 18.)

**E. Standard of Review**

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights

8

because of the agency's procedural lapses." (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the

9

credibility of witnesses, including that of the claimant.").

**F. The ALJ's Finding of Medical Improvement Is Not Supported By Substantial Evidence**

Plaintiff disputes the ALJ's finding that medical improvement occurred as of October 10, 2007. (Tr. 15; Dkt. 8, Pl.'s Mot. Summ. J. at 12.) Defendant responds that Plaintiff's "sparse treatment records" from this period support the ALJ's finding. (Dkt. 12, Def.'s Mot. Summ. J. at 12.) [delete space] In medical improvement cases, "the central question is whether [the] claimant's medical impairments have improved to the point where [the claimant] is able to perform substantial gainful activity." *Kennedy v. Astrue,* 247 F. App'x 761, 764 (6th Cir. 2007) (citing 42 U.S.C. § 423(f)(1)). The burden is on the Commissioner to present substantial evidence of medical improvement. *Id.* at 765. The implementing regulations define "medical improvement" as a decrease in the medical severity of a claimant's impairment. 20 C.F.R. § 416.994(b)(1)(ii). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) . . . ." *Id.*

This analysis requires a comparison of the severity of the Plaintiff's condition at the onset of her disability and her condition as of October 10, 2007. *Id.* The ALJ found medical improvement as of October 10, 2007 because: 1) The frequency of Plaintiff's visits to medical personnel decreased as evidenced by her lack of treatment records beyond October 10, 2007; 2) Plaintiff did not suffer any "actual syncopal episodes" after October 10, 2007; and 3) Plaintiff gained weight post October 10, 2007. (Tr. 14.) Implicit in this reasoning is a finding that Plaintiff's testimony regarding her post-October 10, 2007 symptoms was not credible. This Court does not agree.

A court is to accord an "ALJ's determinations of credibility great weight and deference

10

particularly since the ALJ has the opportunity, which [a court does] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). However, an ALJ must not reject a claimant's "statements about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2); *see also* S.S.R. 96-7p, 1996 WL 374186. In fact, the regulations provide a non-exhaustive list of other considerations that should inform an ALJ's credibility assessment: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant received for relief of pain or other symptoms; (6) any measures the claimant used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). Although an ALJ need not explicitly discuss every factor, *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005), an ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p, 1996 WL 374186 at *2.

With regard to the frequency of Plaintiff's treatments post October 10, 2007, S.S.R. 96-7p states:

> [T]he individual's statements may be less credible if the level of frequency of treatment is inconsistent with the level of complaints, or

11

> if the medical reports or records show that the individual is not following the treatment prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

*Id.*

In this case, the ALJ specifically questioned Plaintiff about her treatment after October 10, 2007. (Tr. 34, 40-41.) Plaintiff gave two explanations for the sparse records: 1) She lost her medical insurance; and 2) The doctors indicated that there was nothing they could do for her. (*Id.*) Yet, the ALJ did not even mention these seemingly valid and uncontradicted explanations in his decision. (Tr. 14-18.) Indeed, the ALJ discredited this testimony despite finding that, "[f]rom September 1, 2004 through October 9, 2007, the claimant's statements concerning the limiting effects of her symptoms [were] generally credible." (Tr. 13.) Rather than considering Plaintiff's explanations, the ALJ concluded that the lack of medical records established that Plaintiff did not require medical attention because her condition had improved. (*Id.*) This failure to analyze Plaintiff's explanations is not harmless. *See Couch v. Comm'r Soc. Sec.*, No. 11-cv-174, 2012 U.S. Dist. LEXIS 36223, at *11-12 (S.D. Ohio Mar. 19, 2012) (finding that the ALJ's failure to analyze Plaintiff's explanation for the lack of medical records not harmless). Moreover, the failure to consider Plaintiff's lack of insurance is not harmless. *Green v. Comm'r Soc. Sec.*, No. 07-12787-BC, 2008 WL 4449854, at *9 (E.D. Mich. Oct. 2, 2008) (finding the ALJ's credibility assessment flawed because "[t]he ALJ did not address the evidence and testimony alleging that Plaintiff had no medical coverage during this time").

Likewise, with regard to syncopal episodes, the ALJ did not compare Plaintiff's testimony

and medical records regarding her pre-October 10, 2007 symptoms with her post-October 10, 2007 symptoms. If he had done so, he would have discovered that Plaintiff did not have any syncopal episodes at any time. (Tr. 178-692.) Therefore, her testimony and medical documentation for both periods are "notably consistent" with regard to syncopal episodes. *See Couch*, 2012 U.S. Dist. LEXIS 36223, at *15-16 (remanding because the ALJ did not compare Plaintiff's testimony with previous testimony that was "notably consistent"). As such, the ALJ's failure to compare the medical records is not harmless. *Id*. at *11-12.

With regard to weight gain, there is medical evidence on the record that Plaintiff lost approximately 50 pounds at the onset of her POTS due to associated nausea. (Tr. 575, 615-20, 623, 691.) There is also evidence that Plaintiff's weight stabilized, and she actually gained weight during her treatment. (*Id*.) Plaintiff argues that this just shows that she responded positively to Xanax and Ativan, "which acted to significantly diminish the generalized nausea." (Dkt. 8, Pl.'s Mot. Summ. J. at 16.) Defendant argues that it supports the ALJ's indication of medical improvement. (Dkt. 15, Def.'s Mot. Summ. J., at 14.) While this could arguably constitute evidence of *some* symptomatic improvement, the Court finds that it is not *substantial* evidence of medical improvement. Nausea is only one symptom of POTS. With regard to the other symptoms – dizziness and lightheadedness – the Plaintiff's testimony is consistent. Moreover, the Court finds "no hint" that Plaintiff's treating physicians ever found Plaintiff to be less than fully credible. *See Couch*, 2012 U.S. Dist. LEXIS 36223, at *15-16 (finding the Plaintiff's testimony credible because there was "no hint that any of her treating physicians found her to be less than credible in reporting her symptoms over time"). Indeed, Plaintiff's treating neurologist acknowledged her persistence in seeking treatment for what he admitted was a very difficult condition. (Tr. 34.) Thus, while the ALJ's analysis of Plaintiff's

weight gain may be correct, his analysis of her sparse treatment records and lack of syncopal episodes is flawed. Therefore, the Court finds that there is not substantial evidence of medical improvement.

**G. Conclusion**

For the reasons set forth above, this Court finds that the ALJ lacked substantial evidence for his finding of medical improvement as of October 10, 2007. Having made this decision, the Court must decide whether to recommend the District Court remand for an award of continuing benefits or for rehearing:

> The [c]ourt can reverse a decision of the Commissioner and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. A judicial award of benefits is proper only where the proof of disability is overwhelming or *where the proof of disability is strong and evidence to the contrary is lacking.* On the other hand, 42 U.S.C. § 405(g) gives the court the power to remand for a rehearing, and the court is obligated to do so if all essential factual issues have not yet been resolved.

*Kennedy v. Astrue*, 247 F. App'x 761, 768 (6th Cir. 2007) (citations omitted, emphasis added).

The ALJ found Plaintiff disabled from September 1, 2004 through October 10, 2007. (Tr.5.) The ALJ's subsequent finding of medical improvement on October 10, 2007 was not supported by substantial evidence. Again, it was the Commissioner's burden to present substantial evidence of medical improvement. *Kennedy*, 247 F. App'x, at 765. Because such evidence is lacking in the record, "the proof of disability is strong and evidence to the contrary is lacking." *Id*. at 768. Accordingly, this Court RECOMMENDS that Plaintiff's Motion for Summary Judgment be GRANTED, that Defendant's Motion for Summary Judgment be DENIED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner be REMANDED with

directions to the Commissioner to award supplemental benefits continuing from October 11, 2007.

## III. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

s/Laurie J. Michelson<br>
LAURIE J. MICHELSON<br>
UNITED STATES MAGISTRATE JUDGE

Dated: April 10, 2012

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on April 10, 2012.

s/Jane Johnson<br>
Deputy Clerk